NOT FOR FULL-TEXT PUBLICATION
File Name: 10a0094n.06

No. 09-3256

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 16, 2010**
LEONARD GREEN, Clerk

OYUN ERDENE ALTANGEREL;
BOLOR BAYARBATTAR, a/k/a
Bolor Bayarbaatar,

                Petitioners,

v.

ERIC H. HOLDER, JR.,
Attorney General,

                Respondent.

_____/

ON PETITION FOR REVIEW
OF AN ORDER OF THE BOARD
OF IMMIGRATION APPEALS

BEFORE:  SUHRHEINRICH, SUTTON, and COOK, Circuit Judges.

      **SUHRHEINRICH, Circuit Judge.**  Oyun Erdene Altangerel (Altangerel), as lead petitioner, and Bolor Bayarbattar (Bayarbattar), as a derivative petitioner, appeal an order from the Board of Immigration Appeals (BIA) upholding an immigration judges' (IJ) denial of their application for asylum, withholding of removal, and protection under the Convention Against Torture.  Altangerel and Bayarbattar argue that the BIA erred in making its adverse credibility determination.  They also claim that the BIA mistakenly determined that, even if the petitioners merited a positive credibility determination, they failed to establish past persecution or a well-founded fear of future persecution.  For the reasons set forth below, we **DENY** the petition for review.

## I.  BACKGROUND

**A.**    **Factual and Procedural Background**

Altangerel and Bayarbattar, wife and husband, are natives of Mongolia. They both entered the United States as non-immigrant visitors and stayed longer than authorized. After Altangerel arrived in the United States, she applied, with the assistance of counsel and a translator, for asylum, withholding of removal, and protection under the Convention Against Torture. Altangerel's application included Bayarbattar as a derivative petitioner. The basis for her application was religious persecution on account of her Baptist faith. After a hearing with an asylum officer, the application was referred to an IJ.

In January 2008, the couple appeared before an IJ via teleconference. They both admitted removability and asserted asylum, withholding, and relief under the Convention Against Torture. Altangerel testified that a friend introduced her to the Baptist Church in 1999, and that she was baptized in 2002. She and others gathered to worship twice a week and actively proselytized through preaching and the distribution of books and brochures. Her family, including her husband, did not initially approve of her religion. Over time, her husband's opposition began to thaw. He would sometimes attend church and accompany her when she proselytized. Conversely, her mother and step-father strongly opposed her Christian beliefs. Her step-father tore up her religious books and attempted to molest her.

According to Altangerel, on June 1, 2002, Altangerel, her husband, and a friend went to a park to preach and distribute religious literature. A police officer approached her and said, "you preaching a false doctrine or false preaching to the public and you must stop." The officer then attempted to confiscate Altangerel's religious materials. She refused. He reacted by pushing her over a fence, which caused her to faint. She was pregnant at the time, and as a result of the force used against her, she had a miscarriage and was hospitalized for three weeks. Bayarbattar hit the

2

officer in response to his use of force against Altangerel. He was arrested and detained for several days, but charges were later dropped. No charges were filed against the officer because Altangerel was depressed from the miscarriage. She became afraid to proselytize because of this incident.

Altangerel testified that she was forced to leave her job due to antagonism towards her religious beliefs. Her husband was also mocked and degraded at work because of his wife's beliefs and the June 2002 incident. He too was eventually forced to quit his job. As a result, the family had to leave Mongolia, and they decided to come to America where they could worship freely. Altangerel and her husband now attend church services at the First Baptist Church in Fairfield, Ohio. She believed that she would face difficulties on account of her religion if she returned to Mongolia. Specifically, she feared returning because the police were looking for her husband as a result of the June 2002 incident and because she believed there were no longer any Baptist churches in Mongolia.

Bayarbattar also testified about the June 2002 incident and his family's attendance at church services in the United States. His testimony was consistent with his wife's. He further claimed that Altangerel's step-father would harm her if she ever returned to Mongolia, and that the police in Mongolia would harm her if they discovered her practicing her religion.

The IJ denied the application for asylum and related relief. He determined that removability had been established by clear and convincing evidence. He further found that, after listening to Altangerel's testimony and observing her demeanor, she was not a fully credible witness. While he found credible Altangerel's testimony about her Baptist faith and experiencing a miscarriage, he decided that she lacked credibility with regard to the June 2002 incident and the cause of the miscarriage. He reasoned that the June 2002 incident was so central to her claim that he could not overlook its absence in her original asylum application. He also afforded Bayarbattar's testimony

3

little weight because Bayarbattar was present for Altangerel's testimony and had a direct interest in the outcome of the case. He further noted the lack of independent corroboration in the record.

The IJ also found that Altangerel did not establish past persecution. In reference to the June 2002 incident, he noted that Altangerel provided testimony that was not credible on a key allegation of past persecution. More so, he determined that even if she was found to be credible, her account did not establish past persecution. He reasoned that a one-time push with unintended severe results—since the officer would not have known that she was newly pregnant—did not constitute past persecution. He further held that Altangerel had failed to establish that the officer pushed her on account of a protected ground because she failed to show that she was pushed because of her religious beliefs rather than for breaking the law.

The IJ also determined that Altangerel had failed to establish a well-founded fear of future persecution. As support, he cited the adverse credibility determination, the failure to establish past persecution, the State Department Human Rights Report and International Religious Freedom Report that suggested that any fear of future persecution on account of her Baptist faith would be objectively unreasonable, and the absence of anything in the record to suggest a risk of future persecution. Accordingly, the IJ denied the asylum claim. He also denied the application for withholding because of the failure to meet the lower burden of asylum. He denied the application for Convention Against Torture relief because nothing in the record supported relief. Altangerel and Bayarbattar appealed this decision to the BIA.

On appeal, the BIA upheld the IJ's ruling. It determined that Altangerel lacked credibility due to her omission about the police officer incident. It rejected Altangerel's argument that the omission was not material enough to support an adverse credibility finding. It was also unpersuaded

4

by the argument that the IJ should have placed more value on the testimony of Bayarbattar. It agreed that his testimony merited limited value because he was present for Altangerel's testimony and had a direct interest in the outcome of the case. The BIA commented that ideally Bayarbattar would have been sequestered from the proceeding, but it faulted Altangerel and Bayarbattar's attorney for this occurrence because the attorney failed to notify the IJ at the beginning of the proceeding that Bayarbattar would testify—he decision to have Bayarbattar testify was not expressed on the record until after Altangerel had completed her testimony. The BIA also agreed that the lack of corroborating evidence in support of Altangerel's account was significant.

The BIA further found that, even if the testimony was found to be credible, Altangerel still failed on the merits of her claim. The BIA determined that the June 2002 incident did not constitute past persecution. It reasoned that Altangerel had failed to meet the persecution threshold under the statute and to demonstrate that the incident was related to a protected ground. It also found that she had failed to establish an objective fear of future persecution. Finally, the BIA upheld the IJ's denial of withholding and relief under the Convention Against Torture.

## II. ANALYSIS

### A.    Legal Standard and Standard of Review

This court employs a two-step inquiry to determine an application for asylum: first, whether the applicant qualifies as a refugee under 8 U.S.C. § 1101(a)(42)(A), and, second, whether the applicant merits a favorable exercise of discretion by the IJ. *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir. 2007). The applicant bears the burden of demonstrating that the definition of refugee has been met. *Id.* This burden can be satisfied with credible testimony. *Id.*

When the BIA's opinion adopts the IJ's reasoning, those aspects of the IJ's decision are

5

reviewed directly. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). Legal conclusions are reviewed de novo and factual findings are reviewed under the substantial evidence standard. *Zhao v. Holder*, 569 F.3d 238, 246-47 (6th Cir. 2009). Under the substantial evidence standard, an administrative finding must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." *El-Moussa v. Holder*, 569 F.3d 250, 255-56 (6th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)). This court may not reverse the BIA's decision simply because it would have come to a different conclusion. *Zhao*, 569 F.3d at 247 (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)).

B.      **Adverse Credibility Determination**

Altangerel fails to demonstrate that the BIA erred when it determined that she merited a partial adverse credibility determination because the BIA appropriately used the omission of the June 2002 incident to reach its conclusion. While Altangerel was not required to provide an exhaustive and detailed list of every incident of persecution on her application, it was acceptable to base her adverse credibility determination on an omission in the asylum application that was substantially related to her claim. *See Liti v. Gonzales*, 411 F.3d 631, 637-39 (6th Cir. 2005). This court's decision in *Shkabari v. Gonzales*, 427 F.3d 324 (6th Cir. 2005), is instructive on this issue. In *Shkabari*, the applicant claimed at his asylum hearing that he had served as chairman of the youth forum of the Democratic Party. *Id.* at 329. He did not mention this political position in his asylum application. *Id.* This court found that the IJ appropriately used the omission as a foundation for its adverse credibility determination because the claim of a leadership position in the party greatly enhanced his case for asylum and was substantially related to his claim. *Id.* Likewise, in this case, the BIA ruled appropriately because the incident with the police officer was the main happening that

6

supported Altangerel's claim for asylum. Altangerel provides several explanations for this omission, including language difficulties, a misunderstanding about her ability to provide more details at her asylum hearing, and poor document preparation by her attorney. She has failed, however, to demonstrate that any reasonable adjudicator would be compelled to find that she provided a convincing explanation for the omission.

The BIA also did not err when it used a lack of corroboration to support its adverse credibility determination. Although corroborating testimony is not required for a favorable credibility determination, the BIA may rely upon a lack of corroborative evidence to reach its conclusion when it finds that the applicant's testimony lacks credibility. *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004). Since the BIA found that Altangerel lacked credibility, it was appropriate for the BIA to ask her to produce evidence that would corroborate the police incident claim. The only corroborating evidence produced consisted of medical records for a miscarriage and documentation demonstrating that Altangerel belonged to the First Baptist Church, as well as Bayarbattar's testimony. The BIA appropriately used Altangerel's failure to produce other evidence, including statements from family members and others in Mongolia who could attest to her religious beliefs and experiences, to make its credibility determination.

Altangerel's claim that the BIA inappropriately discounted the testimony of Bayarbattar also fails because substantial evidence supported the BIA's determination. Bayarbattar had a direct interest in the outcome of the case, and he had listened to Altangerel's testimony prior to his own testimony. As expressed by the BIA, it would have been preferable for Bayarbattar to be sequestered during his wife's testimony; however, blame for keeping him in the room appears to rest on Altangerel and Bayarbattar's counsel. Even in the event that this was error on the part of the IJ, there

7

were other sufficient inconsistencies, such as the significant omission, that support the BIA's decision. *See Ben Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007) ("After a review of each individual basis used to support the IJ's adverse credibility finding, we conclude that while many were irrelevant, or in fact, not even inconsistent, there is sufficient inconsistency in the record to support the IJ's conclusion, especially in light of the extremely deferential standard of review to which we must adhere.").

In sum, substantial evidence supports the adverse credibility determination.

## C.    Persecution Determination

In light of the partial adverse credibility determination, Altangerel fails to establish that the BIA erred in determining that she did not meet the definition of a refugee. In fact, the BIA's determination that, even if Altangerel and Bayarbattar were considered credible, they did not establish that Altangerel had endured past persecution or had a well-founded fear of future persecution, is also supported by substantial evidence. Although the BIA may have erred when it determined that Altangerel did not engage in a protected activity, substantial evidence supports the BIA's conclusion that Altangerel did not meet the statutory threshold of persecution.

This court has found that persecution involves "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). A single incident may be enough to establish past persecution. *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (per curiam). However, a single beating does not compel a court to find that the persecution threshold has been met. *Gjokic v. Ashcroft*, 104 F. App'x 501, 505 (6th Cir. 2004). This one isolated incident, along with verbal abuse from family and coworkers, is not enough to overturn the BIA's

8

decision.

The BIA also correctly determined that Altangerel did not have a well-founded fear of future persecution. Altangerel did not merit a presumption of a well-founded fear of future persecution because she failed to establish past persecution. *Mikhailevitch*, 146 F.3d at 390. Therefore, she bore the burden of proof with regard to future persecution. *Id.* To prevail, she had to demonstrate that her fear of future persecution was both subjectively sincere and objectively reasonable. *See Velasquez-Velasquez v. INS*, 53 F. App'x 359, 362 (6th Cir. 2002) (per curiam); *see also Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987). The IJ appropriately used the human rights reports to establish that her fear of future persecution was objectively unreasonable. *See Rusishvili v. Mukasey*, 295 F. App'x 805, 807 (6th Cir. 2008).

Since substantial evidence supports the refugee determination, this court does not need to consider whether Altangerel merits a favorable exercise of discretion. *See Mikhailevitch*, 146 F.3d at 390. Altangerel and Bayarbattar have waived their arguments that they qualify for protection under withholding or the Convention Against Torture because they do not raise any arguments on these issues in their appeal brief. *See Shkabari*, 427 F.3d at 327 n.1.

### III. CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.

9