NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0274n.06

No. 09-3031

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 04, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ZEIROUB LY, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ERIC H. HOLDER, JR., United States Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

BEFORE:  GIBBONS and GRIFFIN, Circuit Judges; and DOWD, Senior District Judge.[*]

GRIFFIN, Circuit Judge.

Zeiroub Ly seeks review of an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  For the reasons that follow, we affirm the BIA's decision and deny Ly's petition for review.

I.

Ly, a native and citizen of Mauritania, was admitted to the United States with a false passport in January 2000 and, later that year, filed a pro se affirmative application for asylum and withholding of removal.  Thereafter, the Immigration and Naturalization Service (now the Department of

_____

[*]The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Homeland Security or "DHS") served Ly with a notice to appear ("NTA"), charging him with removability under section 237(a)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(A). Ly admitted the factual allegations in his NTA, conceded his removability as charged, and, through his newly retained counsel, filed an amended application for asylum and withholding of removal based on race, political opinion, and membership in a particular social group, and for protection under the CAT.

On August 14, 2007, a hearing on the merits of Ly's claims for relief was held before an IJ. Ly testified that he was persecuted in Mauritania because of his Fulani ethnicity and his active membership in the student group known as the Association des Etudiants Pulaar ("AEP"), which sought "to reform the Arab-dominated educational system to benefit Blacks." Ly also stated that his father was an active member of an opposition political party and a group which educated workers about their rights in Mauritania.

In early 1989, Ly and five other students were arrested and jailed for five days because of their participation in an AEP strike for educational reform. While incarcerated, Ly was falsely accused of being a member of a different political opposition group known as the Front de Liberation des Africains de Mauritanie ("FLAM") and was beaten and tortured.[1]

In April 1989, during the conflict between Mauritania and Senegal, Ly, his father, and his two brothers were arrested at their home by government agents because of their Fulani ethnicity. They

---

[1]While Ly was not a FLAM member, his older brother and uncle were members of the organization.

were imprisoned for five days and then placed in a military camp. There, Ly was kept in a three-meter square cell housing nine people, interrogated by officials who accused him of being a FLAM member, beaten, tortured, and starved.

In November 1989, Ly and the other Fulani prisoners were released from the military camp, taken to a river on the Mauritania/Senegal border, and ordered to swim to Senegal. Ly swam to Senegal, where he was rescued by Senegalese authorities and sent to a refugee camp. Ly lived in Senegal until 2000.[2]

In 1993, the Mauritania/Senegal border was reopened, and Ly made three or four brief trips to Mauritania between 1993 and 1998 to trade goods.[3] While visiting Mauritania, Ly was not arrested, although he claims the Mauritanian police frequently followed him. Ly was able to obtain a passport in Mauritania.

Ly stated that if he returns to Mauritania, he will be arrested, jailed, forced into slavery, tortured, or killed because of his past political activities and affiliations, his Fulani ethnic background, and his skin color. He alleged that racism pervades Mauritanian society. Ly testified that his sister lives in Mauritania and is sometimes afraid to talk to him on the phone because she fears that others could be listening.

In his asylum application and at the merits hearing, Ly represented that he would be willing

---

[2]During his time in Senegal, Ly did not have lawful status and never applied for refugee status because he was afraid that members of the Mauritanian secret police would discover his whereabouts.

[3]Ly's visits to Mauritania did not exceed six months.

to return to Mauritania if the military regime were no longer in power and democracy were established. While Ly conceded that the military no longer controlled the Mauritanian government following the recent election of a new president, he testified that the political system still had not changed.

Immediately following the hearing, the IJ entered an oral decision denying Ly's requests for asylum, withholding of removal, and CAT protection. Although the IJ deemed Ly to be credible and found that he had been persecuted in Mauritania in 1989 based upon his race, ethnicity, and imputed political opinion, the IJ ruled that the DHS had successfully rebutted the presumption of future persecution based upon its evidence of changed country conditions in Mauritania. The IJ described this evidence as follows:

> The background information indicates that, while Mauritania's human rights record has remained poor, there have been significant improvements recently. It also notes that the presidential elections were scheduled for March of 2007. Picking up on that thread, the DHS's submission . . . indicates that those presidential elections have, in fact, occurred and that [the] opposition candidate was elected president and [the] opposition party won the greatest share of seats in the Parliamentary voting. [A] *Washington Post* article[] indicates that economists and former Minister Sidi Mohamed Ould Cheikh Abdallahi has been elected Mauritania's president in historic polls, which opened a new era of civilian democracy in the Arab-African Islamic state. The election of a civilian head of state sealed the democratic handover by a military junta, which took power in the former French colony in a 2005 coup. . . . European [U]nion and U.S. observers said that the vote had gone smoothly and held it as the freest ever in Mauritania. The document also indicates that a U.S. Embassy official indicates that [he or she] can affirm that the elections went ahead in a credible, fair and transparent manner and that the election success makes Mauritania a democratic model for both Africa and the Arab world. Other documents . . . indicate that a coalition of parties [who] opposed the Mauritania's ousted dictator [won] the largest share of seats in the country's new Parliament and that the coalition of parties that had opposed former President Taya won 41 seats overall and that independent candidates won 39 seats, in contrast to Taya's party, which won only 7

seats.

(Internal citations omitted.) From this evidence, the IJ found that "a fundamental change has occurred in Mauritania as a result of both Parliamentary and presidential elections[,]" that "Mauritania has transitioned toward a democratic state[,]" and that "this change is fundamental in the conditions that appear in that country."

The IJ also found that Ly no longer had a well-founded fear of persecution as evidenced by: his voluntary business trips to Mauritania between 1993 and 1998, his ability to obtain a government-issued passport in Mauritania, and his testimony that he would return to Mauritania if the prior military regime were no longer in power and democracy were established.

On December 24, 2008, the BIA dismissed Ly's appeal, ruling that he lacked a well-founded fear of persecution because his persecution occurred twenty years ago, and he voluntarily returned to Mauritania three or four times between 1993 and 1998 and was not harmed. The BIA also agreed with the IJ that the 2006 country report for Mauritania indicated that conditions had fundamentally changed and noted the report's statement that "most returnees received their original homes, some property, and all or a portion of their land." (Citation and internal quotation marks omitted.) The BIA concluded: "While there is certainly evidence in the record of racial discrimination in Mauritania, we cannot conclude [Ly] faces a 'discernable' chance of persecution on account of his race."

Thereafter, Ly retained new counsel, and timely filed the pending petition for review.

II.

Ly argues that we should vacate the BIA's denial of his requests for asylum, withholding of removal, and CAT protection, remand for further proceedings, and stay his deportation.

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination. To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal citation omitted).

We review questions of law de novo and factual findings under the substantial evidence standard. *Khalili*, 557 F.3d at 435. Under this test, factual findings must be sustained if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). The findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B). In other words, "[w]e cannot reverse such findings simply because we would have decided them differently." *Khalili*, 557 F.3d at 435.

An alien seeking asylum must establish that he is a "refugee," which is defined as one who is "unwilling or unable to return to" his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. §§ 1158(b)(1)(B)(I) & 1101(a)(42)(A). "Proof of past persecution raises a rebuttable presumption of a well-founded fear of persecution." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007) (citing 8 C.F.R. § 208.13(b)(1)). However, the government may rebut

this presumption if it shows that "[t]here has been a fundamental change in circumstances" in the applicant's home country so that he no longer has a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(1)(i)(A). To rebut the presumption based on changed country conditions, the government must establish by a preponderance of the evidence that:

> conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted upon return. The [government] must do more than show that circumstances in the country have fundamentally changed; [it] must also show that such change negates the particular applicant's well-founded fear of persecution.

*Ouda v. INS*, 324 F.3d 445, 452 (6th Cir. 2003).

"If the government rebuts the presumption, the applicant must demonstrate a well-founded fear of future persecution notwithstanding the changed country conditions." *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) (citation and internal quotation marks omitted). "A well-founded fear of persecution has both a subjective and an objective component: the [applicant] must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citation omitted). To meet this requirement, the applicant need not "show that he probably will be persecuted if he is deported; 'one can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" *Id.* at 950-51 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987)).

To qualify for withholding of removal, an applicant must demonstrate that it is "more likely than not" that his "life or freedom would be threatened in [the] country [to which he would be

removed] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Because this standard is more stringent than the "well-founded fear" of persecution standard applicable to asylum claims, an applicant who fails to establish that he is a "refugee" eligible for asylum will necessarily fail to qualify for withholding of removal. *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004). If the applicant establishes past persecution, it is presumed that his life or freedom will be threatened in the future. 8 C.F.R. § 208.16(b)(1)(i). Like asylum relief, that presumption can be rebutted if the IJ finds that there has been a fundamental change in circumstances in the proposed country of removal or that the applicant could reasonably be relocated to another part of that country, such that his life or freedom would not be threatened. 8 C.F.R. § 208.16(b)(1)(i)(A)-(B) & (b)(1)(ii).

Under the Convention Against Torture, removal must be withheld if "it is more likely than not that [the applicant] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Unlike asylum and withholding of removal, no protected-ground nexus is required to obtain relief under the CAT. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006). Torture is "an extreme form of cruel and inhuman treatment[.]" 8 C.F.R. § 1208.18(a)(2). Specifically, it is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" to extract information, punish, intimidate, coerce, or otherwise discriminate, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all

evidence relevant to the possibility of future torture shall be considered, including, but not limited to": past torture, the applicant's ability to relocate to an area of the country of removal where he would not likely be tortured, and violations of human rights in the country of removal. 8 C.F.R. § 208.16(c)(3)(i)-(iii).

### III.

Ly asks that we take judicial notice of an August 2008 military coup in Mauritania, in which the military, led by former president Taya, ousted the civilian president, imprisoned him, and has been persecuting Mauritanians like Ly. He identifies two online news articles and the 2008 country report for Mauritania which, according to Ly, undermine the BIA's and IJ's findings of changed conditions in Mauritania because they demonstrate that the transformations which occurred in Mauritania in 2007 were "superficial" only.

Ly cites no authority permitting us to take judicial notice of these alleged events, and the law is clear that we lack jurisdiction to consider claims that were not administratively exhausted. 8 U.S.C. § 1252(d)(1). In this regard, we may consider only "the administrative record on which the order of removal is based," 8 U.S.C. § 1252(b)(4)(A); we may not supplement the administrative record with additional evidence. 8 U.S.C. § 1252(a)(1) (providing that reviewing court may not consider additional evidence). Accordingly, we do not take judicial notice of the alleged coup, nor do we consider the news articles and Mauritania's 2008 country report that were not part of the administrative record or considered by the BIA and IJ. *See Lin v. Holder*, 565 F.3d 971, 978-79 (6th Cir. 2009) (refusing to take judicial notice of a country report because it was outside the

administrative record).

Moreover, Ly did not raise the issue of the recent country reports before the BIA and has not filed a motion to remand requesting further factfinding. As noted by the government, "If Mr. Ly believed that the Board could not have properly resolved his appeal without further fact finding, Mr. Ly could have filed a motion to remand or motion to reopen with the agency. *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand.").

IV.

Ly argues that substantial evidence does not support the BIA's and IJ's findings that (1) there was a fundamental change in country conditions in Mauritania, (2) he lacked a well-founded fear of future persecution, and (3) he would not be tortured if removed to Mauritania.

Although the BIA and IJ found that Ly was persecuted in Mauritania, they held that he lacked a well-founded fear and probability of future persecution, as well as a likelihood of torture, if he returned. They gave the following reasons: his persecution and torture occurred almost twenty years ago, he voluntarily made several business trips to Mauritania between 1993 and 1998 and was not harmed, he was able to obtain a government-issued passport in Mauritania, he testified that he would return to Mauritania if the prior military regime were no longer in power and democracy were established, and the legal presumption of a well-founded fear of future persecution stemming from Ly's past persecution was rebutted by the documentary evidence in the record, including the country reports and internet news articles, establishing changed conditions in Mauritania with the free

- 10 -

election of a civilian president.

Based upon the evidence made a part of the administrative record, we hold that substantial evidence supports the BIA's and IJ's findings and the record does not compel a contrary conclusion. In this regard, we note that an applicant's return trips to the proposed country of removal, without harm, particularly when coupled with a significant passage of time since the persecution occurred, undermines his claim of future persecution. *See Belayneh v. INS*, 213 F.3d 488, 491(9th Cir. 2000) (holding that the petitioner did not have a well-founded fear of persecution, in part, because she made three return trips to her home country, "without incident[,]" and the persecution occurred "a quarter century ago"); *Kopyonkina v. Mukasey*, 313 F. App'x 762, 770 (6th Cir. 2008) (unpublished)[4] ("'An applicant's claim of persecution upon return is weakened, even undercut, . . . when the applicant has returned to the country without incident.'") (quoting *Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001)) (internal quotation marks and citation omitted).

Moreover, an applicant's ability to obtain a government-issued passport may undermine his eligibility for asylum and withholding of removal. *See Rodriguez-Rivera v. INS*, 848 F.2d 998, 1006 (9th Cir. 1988) (per curiam) (stating that petitioner's procurement of "a passport from the government . . . [is] relevant in assessing a request for asylum or withholding of deportation and further undercut[s] [his] claims of a well-founded fear of governmental persecution."); *Kane v. Gonzales*, 236 F. App'x 178, 184 (6th Cir. 2007) (unpublished) (implying that the petitioner's

---

[4]Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis but may be considered for their persuasive value. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

"freedom to depart from Mauritania[] with the apparent blessing of the government" is a factor supporting the IJ's finding that he lacked a fear of future persecution based upon his past persecution).

Finally, we have recently upheld findings that, because of changed country conditions in Mauritania, applicants lacked objective fears of future persecution there. *See Koita v. Mukasey*, 314 F. App'x 839, 843-44 (6th Cir. 2009) (unpublished) (holding that the free elections held in Mauritania in 2006 and 2007 constituted "substantial evidence support[ing] the BIA's determination that conditions in Mauritania have fundamentally changed."); *Sy v. Mukasey*, 278 F. App'x 473, 476 (6th Cir. 2008) (unpublished) ("Improving conditions in Mauritania since [the petitioner's] departure, however, doom his [asylum] petition."); *Sall v. Gonzales*, 239 F. App'x 975, 981 (6th Cir. 2007) (unpublished) ("The 2003 State Department Report states that many of the former refugees have returned to Mauritania, that the Mauritanian government is cooperating with humanitarian groups to assist returning refugees, and that the government has returned property to many of the refugees[,]" thereby "support[ing] the BIA's determination that changed circumstances bar [the petitioner's] application for asylum."). While Mauritania may still have broad social and political shortcomings in need of improvement, as the BIA observed, these deficiencies do not suggest a well-founded fear or likelihood that Ly will be persecuted or tortured. *See Mapouya*, 487 F.3d at 412 ("If the government rebuts the presumption, the applicant must demonstrate a well-founded fear of future persecution notwithstanding the changed country conditions.").

V.

Ly also argues that the BIA and IJ violated his procedural due process right to a fair hearing because their rulings were allegedly based upon unclear findings. He maintains that the IJ's finding of changed country conditions in Mauritania "was predicated on [the IJ's] finding that the fair elections in Mauritania in 2007 had moved the country in the direction of a democratic state. But the [IJ] completely ignored the facts stated in the Country Reports that Blacks and members of minority ethnic groups like the Fulanis continue to be subject to enslavement and other social abuses as well as to limitations upon their right to vote."

We lack jurisdiction over Ly's due process challenge to the IJ's ruling. In his appellate brief to the BIA, Ly did not argue a due process violation, even though the BIA could have corrected any that may have existed by remanding the case to the IJ for further factual findings. Therefore, Ly's due process claim was not properly exhausted, and we do not consider it now. 8 U.S.C. § 1252(d)(1); *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) ("[T]his Court lacks jurisdiction to review any issues that have not been raised and administratively exhausted below"); *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) ("Although an alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges), the alien must raise correctable procedural errors to the BIA," or appellate review of those claims is precluded). In any event, it is apparent that Ly's argument is merely a challenge to the sufficiency of the evidence under the guise of a due process argument.

Regarding the BIA's ruling, Ly asserts that the BIA's use of the word "discernable" in its finding that he does not "face[] a discernable chance of persecution on account of his race" was

unclear as to whether it was "a term of art or of legal significance." In addition, he argues that the BIA erroneously limited its analysis to the single protected ground of race, despite the IJ's finding of past persecution based upon the three protected grounds of race, ethnicity, and imputed political opinion. Finally, Ly contends that the BIA erred in applying a "clearly erroneous" standard of review to the IJ's finding of changed country conditions and should have reviewed that ruling de novo.

Due process rights under the Fifth Amendment to the United States Constitution extend to aliens in deportation proceedings. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). We review claims of due process violations in such proceedings de novo, *Denko*, 351 F.3d at 726, and hold that the BIA committed no procedural due process errors.

Although Ly argues that the BIA's ruling was limited to one protected ground – race – the following omnibus language in the final paragraph of the BIA's written order plainly suggests no such circumscription: "[T]here is insufficient evidence to conclude that the respondent possesses an objectively well-founded fear of future persecution." Likewise, there are no indications that the BIA applied the incorrect legal standard of review or that its use of the word "discernable" demonstrates that the BIA misunderstood the appropriate law, which we presume it applied. *Pilica*, 388 F.3d at 949 ("Absent evidence to the contrary, this Court presumes that the BIA applied the correct standard of review") (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), overruled in part by, *Califano v. Sanders*, 430 U.S. 99 (1977)).

VI.

For these reasons, we affirm the BIA's decision and deny Ly's petition for review.