NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0394n.06

No. 08-4103

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 01, 2010
LEONARD GREEN, Clerk

AMI MANSARE,                                       )
                                                   )
        Petitioner,                                )
                                                   )    ON PETITION FOR REVIEW OF AN
v.                                                 )    ORDER OF THE BOARD OF
                                                   )    IMMIGRATION APPEALS
ERIC H. HOLDER, JR., Attorney General,             )
                                                   )
        Respondent.                                )

Before: CLAY, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge.  Ami Mansare, a native and citizen of Guinea, seeks review of a Board

of Immigration Appeals ("BIA" or "Board") decision dismissing her appeal of the Immigration

Judge's ("IJ") denial of her asylum claim.  Because substantial evidence supports the agency's

determination, we deny Mansare's petition.

I.

The Department of Homeland Security charged Mansare with entering the United States

without being admitted or paroled in violation of 8 U.S.C. § 1182(a)(6)(A)(i).  The IJ denied her

applications for asylum, withholding of removal, and Convention Against Torture ("CAT")

protection.  The BIA dismissed her appeal, upholding the IJ's adverse-credibility determination and

denial of Mansare's applications.

Mansare's somewhat inconsistent story of past persecution forms the basis of her asylum claim. The trouble started when soldiers from a rival ethnic group stormed Mansare's home and arrested her and her husband. Testifying before the IJ, Mansare identified her captors as Guinean soldiers in Guinean military uniforms, although her asylum application described them as both "rebels" and "guerilla fighters." The soldiers demanded money, claiming that "[y]ou Malinke people, you have a lot of money," and then dragged Mansare off to a camp where they forced her to cook and provided her with inadequate food and medical care. The "chief" on duty each night sexually assaulted her.

After Mansare came to the United States, a counselor diagnosed her as suffering from Post Traumatic Stress Disorder ("PTSD") induced by this trauma in Guinea. Mansare apparently told the counselor that more than one individual at a time had raped her. She testified before the IJ, however, that a rotating person of authority raped her each night and beat her if she resisted. The ordeal left Mansare with scars on her back from being beaten with belts; although her testimony omitted mention of scarring from cigarette burns, she had previously reported these scars to the counselor.

Four months after Mansare's arrest in Guinea, her captors became extremely intoxicated, and she escaped through an unlocked window in her small room. Mansare made her way to a friend's home, where she stayed for several months. Fearing discovery, she would not visit a doctor, but a relative somehow managed to renew her passport for her. After arriving in the United States, Mansare's nephew assisted her in filling out the asylum application.

The IJ found that Mansare lacked credibility and rejected her application. In addition to inconsistencies in her story, the judge doubted the plausibility of her escape (why she waited four months to escape from an unlocked window) and the reasons why she had never tried to contact her husband after escaping. Moreover, the IJ expressed concern about the lack of corroboration, noting that Mansare remained in touch with family members in Guinea who had knowledge of her ordeal. In her petition to this court, Mansare argues error in the IJ's adverse-credibility determination, the BIA's failure to address the issues she presented, and the IJ's and the BIA's denial of due process. She also urges this court to consider the impact on her case of a 2008 military coup in Guinea.

II.

A.

"Where the Board affirms the IJ's ruling but adds its own comments, we review both the IJ's decision and the Board's additional remarks." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009). "Credibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). "'Under this deferential standard, the court may not reverse the Board's determination simply because we would have decided the matter differently.'" *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009) (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). For this court to reverse the agency's decision, Mansare must show that the evidence "'not only supports a contrary conclusion, but indeed compels it.'" *Hassan v. Holder*, 604 F.3d 915, 925 (6th Cir. 2010) (quoting *Mullai v. Ashcroft*, 385

F.3d 635, 638 (6th Cir. 2004)); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).  On the other hand, "[a]n adverse credibility finding must be based on issues that go to the heart of the applicant's claim.  They cannot be based on an irrelevant inconsistency.  If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Sylla*, 388 F.3d at 926 (internal quotation marks and citations omitted).[1]

B.

To establish eligibility for asylum under 8 U.S.C. §1158(b)(1), Mansare must demonstrate either past persecution or a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution.  8 C.F.R. § 1208.13(b)(1).  To meet the more stringent requirements for withholding of removal and CAT protection, Mansare must show that it is more likely than not that removal would subject her to persecution on account of membership in one of the same protected categories or to torture.  *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006).  Citing numerous discrepancies in her testimony, the IJ found Mansare not credible.  Mansare challenges that determination as relying on minor inconsistencies—some of which she attributes to her PTSD—and speculation, none of which concern matters that go to the heart of her claim.

_____

[1]Mansare submitted her asylum application in 2003, before the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, removed the requirement that any discrepancy go to the heart of the applicant's claim.  *See Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006).

As an initial matter, Mansare claims that the IJ failed to make a clear statement regarding credibility because the IJ found "her not to be a fully credible witness." This court, however, recently used that same phrase in describing an adverse-credibility determination with apparently clear meaning. *See Altangerel v. Holder*, No. 09-3256, 2010 WL 545433, at *2 (6th Cir. Feb. 16, 2010) ("not a fully credible witness"); *see also Soumare v. Holder*, 343 F. App'x 75, 78 (6th Cir. 2009) (IJ found petitioner "not to be a fully credible witness"). Moreover, the IJ later clarified any earlier ambiguity, saying "this respondent is not credible."

Mansare insists that the IJ erroneously focused on irrelevant inconsistencies in her testimony. The IJ's determination relied on several contradictions, namely that: in her asylum application Mansare stated that rebels or guerilla fighters came to her home, but at the hearing testified that it was Guinean soldiers in Guinean military uniforms; and Mansare failed to mention cigarette burns in her testimony, though she had earlier described them to the psychological counselor.[2] Other veracity problems concerned the IJ, including discrepancies regarding her friend's name, her husband's nationality, the details of the rapes, and her managing to secure a passport while supposedly in hiding and too afraid to seek medical care. The IJ further noted misgivings about a lack of corroboration, the plausibility of her escape story, and her reasons for failing to contact her husband.

---

[2]Mansare questions the propriety of relying on the unsworn statements in the counselor's psychological evaluation, but she admitted to making those statements when questioned at the hearing.

The IJ could view exaggerations or lies concerning the details of Mansare's mistreatment and reaction to that abuse as an attempt to enhance her claim of persecution and as statements that go to the heart of her claim. *See Vasha v. Gonzales*, 410 F.3d 863, 869–72 (6th Cir. 2005) (where major inconsistencies go to the heart of the claim, IJ's citation to additional minor problems or speculation does not undermine credibility ruling). At the very least, Mansare's inconsistency in describing who abducted her, failure to report the cigarette burns, and implausible escape story are relevant. Mansare insists that her nephew used the wrong word to describe the soldiers when filling out her asylum application; but she admitted that he read the form back to her before she signed it. Thus, while some of Mansare's explanations may seem plausible, they do not "meet the high standard of *compelling* a contrary result." *Yu v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004).

Mansare also contends that the PTSD diagnosis explains much of her behavior, including why she failed to escape immediately and chose not to reunite with her husband, and that the IJ ignored this diagnosis in error. But Mansare has not shown how PTSD could explain her inconsistency in describing the abductors or the omission of her cigarette burns from her testimony. *See Saanon v. Holder*, 338 F. App'x 103, 105–06 (2d Cir. 2009) (where petitioner "fails to adequately explain how such consideration would have impacted the IJ's specific credibility-related" determination, agency did not improperly ignore PTSD). Given the substantial deference we owe to the agency's conclusions, we reject Mansare's arguments.

C.

Mansare further alleges a denial of due process, first targeting the IJ's failure to address the PTSD evidence. Because she did not present this due process claim to the BIA and because the BIA could have remedied the IJ's failure by remanding for further fact finding if she had raised the claim, we cannot review Mansare's due process claim. *See Ly v. Holder*, No. 09-3031, 2010 WL 1780261, at \*7 (6th Cir. May 4, 2010); *see also Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Mansare next insists that the Board denied her due process by relying on only some of the contradictions in her testimony and by failing to address her PTSD or her explanations for the other undiscussed inconsistencies. The BIA noted that the IJ "identified numerous discrepancies," but only addressed a specific few that strongly supported an adverse-credibility finding. The BIA opinion, however, reflected a consideration of the record and sufficiently addressed the pertinent issues to facilitate our review. *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) ("What is required is merely that [the BIA] consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." (citation and internal quotation marks omitted)). Thus, Mansare's due process claims lack merit.

D.

By attaching a State Department report to her brief, Mansare draws our attention to a December 2008 military coup in Guinea that she argues alters her fear of return and justifies further

proceedings if remanded. The statute requires that "'the court of appeals shall decide the petition only on the administrative record on which the order of removal is based.'" *Huang v. Mukasey*, 523 F.3d 640, 656 (6th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(A)). Mansare should direct her changed-conditions arguments to the BIA, as "Attorney General regulations permit further motions to reopen to seek asylum or withholding of removal based on changed conditions in the country of nationality or removal." *Kucana v. Holder*, 130 S. Ct. 827, 832 n.5 (2010) (citing 8 C.F.R. § 1003.2(c)(3)(ii)). Accordingly, we do not review Mansare's arguments concerning changed conditions that are not supported in the administrative record.

III.

We deny the petition.