**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0488n.06

No. 09-3315

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 09, 2010**
LEONARD GREEN, Clerk

AISSATA BA,                                    )
                                               )
        Petitioner,                            )
                                               )   ON PETITION FOR REVIEW OF AN
v.                                             )   ORDER OF THE BOARD OF
                                               )   IMMIGRATION APPEALS
ERIC H. HOLDER, JR., Attorney General,         )
                                               )
        Respondent.                            )

Before: GIBBONS and COOK, Circuit Judges; VAN TATENHOVE, District Judge.[*]

COOK, Circuit Judge. Aissata Ba, a native and citizen of Mauritania, petitions for review of the Board of Immigration Appeals ("BIA")'s order affirming the Immigration Judge ("IJ")'s denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] We deny Ba's petition.

I.

A Black Fulani, Ba claims that she suffered persecution on account of her race and political opinion. At the immigration hearing, Ba testified regarding the harm she and her father allegedly

---

[*]The Honorable Gregory Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1]Ba fails to challenge the denial of CAT relief on appeal.

suffered. According to Ba, the authorities targeted her father due to his ethnicity, arresting him several times. After her father's last arrest, Ba never saw him again.

As a result of her father's disappearance, Ba participated in two political demonstrations. In 1995, she spoke at a demonstration seeking justice for those whose relatives had disappeared or been killed by the government. After the event, the authorities arrested and detained Ba, releasing her when she signed a document refusing to engage in any further demonstrations. In 1997, however, Ba attended another demonstration where she again spoke about her father's disappearance. When the authorities broke up the rally, they arrested Ba, detaining her until she signed another document pledging not to participate in future demonstrations. During her imprisonment, the officers beat Ba on two different occasions.

Following her release, Ba, a cosmetic salesperson, traveled to the United States and Senegal for business. In 1999, while traveling to Senegal, Mauritanian airport authorities found a newspaper from the Front for the Liberation of Africans in Mauritania ("FLAM") in her luggage. According to Ba, this discovery prompted the authorities to detain and beat her. When the authorities released Ba, they instructed her to return for a court hearing approximately three months later.

Fearful that the authorities would again imprison her, Ba sought a business visa, and entered the United States in July 1999. In April 2000, Ba submitted an application for asylum, withholding of removal, and CAT protection. Thereafter, the Department of Homeland Security served Ba with

a notice to appear, charging her with removability for overstaying her visa pursuant to 8 U.S.C. § 1227(a)(1)(B).

Finding Ba's testimony not credible, the IJ denied her requests for asylum and withholding of removal. The IJ also denied her request for CAT protection, citing the absence of credible testimony or evidence necessary to meet the burden of proof. Accordingly, the judge ordered Ba removed to Mauritania. The BIA adopted and affirmed the IJ's adverse-credibility determination and noted Ba's failure to raise any arguments concerning the denial of CAT relief on appeal.

II.

Where the BIA adopts the IJ's opinion with additional commentary, "that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). In immigration proceedings, we review factual findings for substantial evidence. *Tapucu v. Gonzales*, 399 F.3d 736, 738 (6th Cir. 2005). Under the deferential substantial-evidence standard, we deem the IJ's factual findings, including credibility determinations, "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

A.    Adverse-Credibility Determination

Ba first challenges the adverse-credibility finding. Because Ba's asylum application preceded the enactment of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, the IJ's adverse-credibility determination "must be supported by specific reasons" and "must be based on issues that

go to the heart of the applicant's claim." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005) (internal quotation marks and citation omitted). Affirmative inconsistencies, as well as omissions, may form the basis of an adverse-credibility determination. *Id*. But discrepancies have no bearing on an applicant's credibility unless they serve to enhance her claim of persecution. *Sarr v. Gonzales*, 485 F.3d 354, 360 (6th Cir. 2007).

The IJ chronicled significant discrepancies between Ba's testimony and her original and supplemental asylum applications and the asylum officer's post-interview assessment. Ba insists that these discrepancies rest on minor inconsistencies that do not go to the heart of her claim and that the IJ improperly relied on them. Because, contrary to Ba's contention, several of the discrepancies go to the heart of Ba's claim, substantial evidence supports the adverse-credibility determination.

First, Ba testified inconsistently regarding her last arrest in Mauritania. At the hearing, Ba testified that, while attempting to fly from Mauritania to Senegal in May 1999, airport authorities detained her after finding FLAM literature in her luggage and, following a month-long detainment, her mother paid her bail. But Ba's original asylum application tells a different story, stating only that authorities interrogated her about a possible connection to FLAM and omitting any mention of detainment. In her supplemental application, Ba provided a different variation, recalling that airport authorities detained her for seven days. The asylum officer's assessment contains yet another account, this one assigning the arrest's occurrence to Ba's return to Mauritania from the United States in June 1999, recounting a two-day period of police detainment, and indicating that her then-

husband paid bail to secure her release. These discrepancies go to the heart of Ba's claim because this event purportedly was the catalyst for her departure from Mauritania and involved possible persecution, perhaps due to an imputed political opinion. Moreover, Ba's hearing testimony, which described a month-long detainment, could be viewed as an attempt to enhance her claim of persecution.

Ba's descriptions of her other alleged arrests contain inconsistencies as well. Ba's original asylum application claimed that authorities imprisoned her after she attended a demonstration in 1991; but she failed to mention this incident at all in her testimony before the IJ. Moreover, although Ba testified that police arrested her in front of the Justice Building during a political demonstration in November 1997 and then held her for nine days, the asylum officer's assessment related that police arrested her at a private residence and detained her for three days.

Inconsistencies also undermine Ba's descriptions of the harm that her father endured. For example, at the immigration hearing, Ba stated that authorities arrested her father in 1984 and detained him for two days, but she omitted this event from her original asylum application and asylum interview. And although Ba testified that authorities arrested her father again in September 1989, her original and supplemental asylum applications claimed that white soldiers beat her parents in April 1989. Furthermore, Ba testified that authorities arrested her father in November 1991, after

which she never saw him again. Her original asylum application, however, omitted any mention of his disappearance.[2]

Citing *Singh v. Gonzales*, 403 F.3d 1081 (9th Cir. 2005), Ba argues that the IJ and BIA improperly relied on the asylum interview notes when deciding her credibility. But in *Singh*, the Ninth Circuit held that the Assessment to Refer could not, "standing alone, [constitute] substantial record evidence supporting the IJ's adverse credibility ground." *Id*. Here, the IJ's credibility assessment included Ba's original and supplemental asylum applications, as well as her hearing testimony. Thus, the asylum notes comprised just one of four varying accounts supplied by Ba and relied upon by the IJ.

Ba's inability to explain her inconsistent descriptions of the harm she and her father suffered convinces us that a reasonable adjudicator would not be compelled to find her credible. This lack of credibility causes her claims for asylum and withholding of removal to fail.

B.     Due Process Claim

Ba further alleges a denial of procedural due process, assigning error to the BIA's reliance on a single discrepancy identified by the IJ when affirming the adverse-credibility determination. The BIA cited one discrepancy as an *example* of Ba's inconsistent testimony, and its failure to

---

[2]Ba mentioned her father's disappearance in her asylum interview and supplemental application, but provided a different date: February 1991.

reiterate the other inconsistencies identified by the IJ does not indicate a failure to consider them. *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) ("What is required is merely that [the BIA] consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.") (citation and internal quotation marks omitted); *Mansare v. Holder*, No. 08-4103, 2010 WL 2617971, at *3 (6th Cir. July 1, 2010) (BIA opinion that noted numerous discrepancies, but discussed only a few, "reflected a consideration of the record and sufficiently addressed the pertinent issues to facilitate our review"). Indeed, the BIA explicitly adopted and affirmed the IJ's decision, which thoroughly catalogued those inconsistencies.

C.     Failure to Exhaust

Ba raises two additional claims: (1) the IJ erred in failing to consider evidence of female genital mutilation as a basis for a well-founded fear of future persecution and (2) changes in country conditions necessitate a remand. Because Ba neglected to raise these arguments before the BIA, however, we lack jurisdiction to consider them. *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) (holding that "only claims properly presented to the BIA and considered on their merits can be reviewed by this court").

III.

We deny Ba's petition.