NOT RECOMMENDED FOR PUBLICATION
FILE NAME: 24A0096N.06

Case No. 23-3520

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

QIANG CHEN-GUO,

  Petitioner,

  v.

MERRICK B. GARLAND, Attorney General,

  Respondent.

)
)
)
)
)
)
)
)
)
)

FILED

Mar 05, 2024

KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW FROM THE BOARD OF IMMIGRATION APPEALS

OPINION

Before: BATCHELDER, MOORE, and CLAY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Qiang Chen-Gou sought asylum and withholding of removal under the Immigration and Nationality Act (INA), and protection under the Convention Against Torture (CAT). An Immigration Judge (IJ) denied his application, the Board of Immigration Appeals (BIA) dismissed the appeal, and Qiang petitions this court for further review. We DENY the petition.

**I.**

Qiang Chen-Guo is a 27-year-old native and citizen of China. He entered the United States in 2013 and the Department of Homeland Security (DHS) issued him a Notice to Appear. He conceded removability, with China as the country of removal, but sought asylum, withholding of removal, and CAT protection due to his fear of persecution for his Christian religious beliefs. Specifically, Qiang claimed to fear religious persecution in China, asserting that he had been arrested, beaten, and detained because he attended an underground Christian church.

At the immigration hearing, Qiang was the only witness and the IJ found that his testimony was not credible. The IJ listed several reasons for this finding, starting with her assessment of

Qiang's demeanor as evasive and non-responsive, explaining that he "had to be asked multiple simple questions over and over again before providing an answer" and then frequently answered "that he did not remember, particularly if the question asked about a subject that was potentially negative to [his] claim." But the IJ also described three specific instances of Qiang's inconsistent testimony as a basis for finding that he lacked credibility.

One, Qiang testified that when the police arrested him at the church in 2013, they beat him severely before taking him to the police station. He further testified that, later at the police station, when he would not answer their questions, they beat him again until he lost consciousness. But in his prior written statement, he never said that he was beaten at the police station.

Two, he testified that upon release from custody on June 15, 2013, he went to hide at the home of his father's friend, where he hid for three months (until he left China) to avoid persecution by the police. Importantly, he testified that he never left that house during those three months. But the DHS presented evidence that, during the time that he claimed to be in hiding, he went to the United States Consulate in China and had his fingerprints taken for his visa application.

Three, Qiang testified that he was only ever issued one passport, but could not explain why his proffered passport had no entry or exit stamps for the countries that he had traveled through on his way to the United States (i.e., Russia, France, and Mexico). The DHS submitted another passport, which Qiang had used to apply for a visa to come to the United States. Confronted with this, Qiang testified that he could not remember if he had ever been issued any other passports.

Moreover, Qiang did not submit evidence to corroborate his claim. Qiang testified that he had a sister, a brother, and some cousins living in the U.S. and that they were familiar with his arrest and injury in China, but he did not provide any affidavit(s) from any of them or call any of them to testify at the hearing.

2

The IJ found that Qiang was not credible and held that he was not entitled to relief. The IJ further explained, in dicta, that even if Qiang were credible, the harm he described from the arrest and mistreatment in China would not constitute past persecution, inasmuch as Qiang testified that the result of those beatings was "only bruises that were treated with some ointment." Moreover, based on his own description of his trip from China, Qiang had not established a fear of future persecution. According to Qiang, he made several aborted attempts to come to the United States before finally doing so; he passed through several countries before arriving in the United States without making a claim of fear in any of those countries (notably France, which is a signatory to the same protective conventions as the United States); and, despite his testimony that the police in China continued to search for him, he was not only allowed to leave China, he was issued a new passport from the Chinese authorities to facilitate his departure. Finally, the DHS produced evidence that Qiang would not be at risk personally for his practicing Christianity in China, and that he was unlikely to be tortured if removed to China.

Qiang sought review from the BIA, claiming that the inconsistencies in his testimony were not relevant to his credibility, so the BIA should overrule the IJ's determination, deem him credible, and grant him the relief he sought. The BIA found that the IJ's "cogent reasons" for finding that Qiang was not credible were supported by the record, *see N'Diom v. Gonzales*, 442 F.3d 494, 500 (6th Cir. 2006), upheld the IJ's determination, and dismissed Qiang's appeal.

**II.**

When the BIA issues an opinion, rather than a summary affirmance, we review that BIA opinion as the final agency decision. *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). We review questions of law de novo and the BIA's factual findings under the highly deferential substantial-evidence standard, meaning that "findings of fact are conclusive unless any reasonable

adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

"An asylum applicant bears the burden of demonstrating that [he] qualified as a refugee by establishing either that [he] has suffered actual past persecution or that [he] has a well-founded fear of future persecution." *K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019) (quotation marks and citation omitted). For withholding of removal, the applicant must show that it is "more likely than not," *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987), that he will be harmed because of his "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A). "This more-likely-than-not test sets a higher bar to relief than the well-founded-fear test required for asylum." *Mbonga v. Garland*, 18 F.4th 889, 899 (6th Cir. 2021). "To obtain relief under the CAT, the applicant bears the burden of establishing it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." *Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020) (editorial marks, quotation marks, and citation omitted). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1139 (6th Cir. 2010) (quotation and editorial marks omitted).

We review the BIA's adverse credibility determination under the substantial-evidence standard. 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Marikasi v. Lynch*, 840 F.3d 281, 288 (6th Cir. 2016). Under that standard, which is "extremely deferential," *Ben Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007), factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B); *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021). We "may not reverse on the

4

basis that [we] would have decided the case differently; rather reversal is merited only if the evidence not only supports a contrary conclusion as argued by the petitioner, but indeed compels it." *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009) (editorial marks, quotation marks, and citation omitted).

Pursuant to the REAL ID Act, 8 U.S.C. §§ 1158(b)(1)(B)(iii) & 1229a(c)(4)(C), an adverse credibility determination may be based on any inconsistencies or falsehoods in the record, regardless of whether they go to the "heart" of the applicant's claim for relief or protection from removal. *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009); *accord Slyusar v. Holder*, 740 F.3d 1068, 1073 (6th Cir. 2014) (explaining that "under the REAL ID Act, even ancillary inconsistencies in a petitioner's testimony support adverse credibility determinations"); *Seo v. Holder*, 533 F. App'x 605, 611-12 (6th Cir. 2013) (holding that "two inconsistencies that the BIA identified as a basis for the adverse credibility determination do provide support for its finding that [petitioner] is not credible, even though both of them are relatively inconsequential to [the] asylum claim").

An applicant does not need to provide corroborating evidence if his testimony is credible and persuasive. 8 U.S.C. § 1158(b)(1)(B)(ii). But, if not, then an applicant's failure to provide reasonably available corroborating evidence can support an adverse-credibility determination. *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (holding that the IJ "did not err in using [the applicant]'s failure to provide corroborating evidence as further support for the negative credibility finding"); *Altangerel v. Holder*, 366 F. App'x 574, 578 (6th Cir. 2010) ("Although corroborating testimony is not required for a favorable credibility determination, the BIA may rely on a lack of corroborative evidence to reach its conclusion when it finds that the applicant's testimony lacks credibility.").

Corroborating evidence is reasonably available "if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Dorosh v. Ashcroft*, 398 F.3d 379, 382-383 (6th Cir. 2004) (quotation marks and citation omitted). "An [IJ]'s determination regarding the availability of corroborating evidence will not be reversed 'unless . . . a reasonable trier of fact [would be] compelled to conclude that such corroborating evidence is unavailable.'" *Lin*, 565 F.3d at 977 (quoting 8 U.S.C. § 1252(b)(4)).

Qiang argues here that the inconsistencies in his testimony are explainable and, therefore, they do not demonstrate that he is not credible. He also argues that the discrepancy between his written statement and his testimony was only minimal and should not support an adverse credibility finding. He adds that, because the IJ did not fully describe—or give specific examples of—his evasive or non-responsive demeanor, we should reject that assessment. Finally, he insists that the country-conditions report for China establishes his well-founded fear of future persecution and that is enough to entitle him to the relief he seeks.

But the BIA reasonably relied on the inconsistencies in Qiang's testimony, the discrepancies between Qiang's testimony and the documentary evidence in the record, and Qiang's failure to produce reasonably available corroborating evidence in finding Qiang not credible. Even without reference to Qiang's demeanor and evasiveness, the BIA found that Qiang presented inconsistent testimony related to the central event that formed the basis for his claim, the beating by police; that Qiang visited the United States Consulate despite testifying that he was in hiding; and that Qiang possessed two passports and used a different passport to travel through countries en route to the United States and to apply for a visa, despite claiming to have only one passport. Considered in totality, these inconsistencies support the IJ's and BIA's adverse credibility

determinations. Nothing in the record—certainly nothing Qiang points to—compels a contrary conclusion.

**III.**

For the foregoing reasons, we DENY the petition for review.