NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2064
_____

RONALDO MARIANO LOPEZ DE LEON; ROSMERY FLORINDA
VELASQUEZ JUAREZ; L. M. L. V.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
BIA-1: A220-990-817
BIA-1: A220-990-818
BIA-1: A220-990-819
Immigration Judge:  Jason L. Pope
_____

Submitted Under Third Circuit L.A.R. 34.1 (a)
April 11, 2025

Before: HARDIMAN, PORTER, and SMITH, *Circuit Judges*.

(Filed April 29, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Circuit Judge*.

Ronaldo Mariano Lopez De Leon, along with his wife, Rosmery Florinda Velasquez Juarez, and their child, L.M.L.V., are natives and citizens of Guatemala. De Leon seeks judicial review of the decision of the Board of Immigration Appeals (BIA) affirming the denial by the Immigration Judge (IJ) of De Leon's application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).[1] We will deny De Leon's petition for review.

I.

De Leon was served with a Notice to Appear on August 12, 2021, charging him with being removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present without being admitted or paroled. At a hearing before the IJ, De Leon conceded he was removable but sought asylum, withholding of removal, and relief under the CAT. He claimed that he had been persecuted on the basis of his political opinion and his membership in a particular social group (PSG).

De Leon testified that, in September 2019, while driving a bus for his employer, two men boarded the bus and put a gun to his side. The men told De Leon that they were from the Mara 18 gang and knew who he was. They then demanded that he give them a large sum of money. De Leon at that time had a newborn child with his wife-to-be.

---

[1] De Leon's wife and child are both derivative beneficiaries of De Leon's application. *See* 8 U.S.C. § 1158(b)(3)(A). The IJ exercised jurisdiction pursuant to 8 C.F.R. § 1208.2(b) and § 1240.1(a)(1). The BIA had jurisdiction to review the IJ's decision under 8 U.S.C. §§ 1003.1(b)(3) and (9) and § 1240.15. We have jurisdiction under 8 U.S.C. § 1252(a)(1).

AR133-34. He claimed the men also knew that he had a family and somehow "thought we had lots of money." AR136. De Leon explained that he paid the demand because he was afraid the men "would do something to my family" or even kill him. *Id.* According to De Leon, one of his coworkers had met such a fate in 2018 for refusing to pay an extortion demand.

De Leon did not immediately return to work after this incident. Having married the mother of his child in December 2019, he soon learned there was no work available in 2020 due to the Covid-19 pandemic. In February 2021, while he was driving a bus, another incident occurred. Four Mara 18 gang members boarded the bus, robbed him, informed De Leon they knew who he was, and demanded that he pay another large sum of money. De Leon testified that his employer was angry that he had been robbed again, which prompted him to quit his job.

At some point, De Leon started to drive a delivery truck for a different employer. In May of 2021, despite having changed his phone number, he received a phone call from a Mara 18 gang member who indicated that the gang had not "forgotten about [him] and that they had a surprise for [him] and [his] family." AR139. De Leon testified that the surprise was that they were going to "kill me for not having paid the money they were trying to extort from me." *Id.*

Because De Leon and his wife no longer felt safe, they moved with their daughter to another town. Then, in July 2021, De Leon and his family fled to the United States to join his wife's family. Only after they arrived in the U.S. did De Leon learn that his in-laws had fled to the United States when his wife was only two years old. They had done

3

so because his father-in-law had also been a victim of extortion and had been beaten. De Leon also learned that gang members had killed his father-in-law's cousin in 2014 after he returned to Guatemala to work as a taxi-driver.

De Leon did not report the 2019 or 2021 incidents in which he was involved to police. He explained that police in Guatemala are corrupt and that they do not help citizens. De Leon testified that if he and his family return to Guatemala, they will be killed. De Leon attributed his mistreatment by the gang members to the fact that "I have family members in the U.S., and my wife does also." AR153. Apparently because of that, he claimed: "They thought that we had lots of money." *Id.*

De Leon admitted that he had not been physically harmed in Guatemala. His parents, who have remained in that country, have not been harmed. His parents have noticed cars they do not recognize parked in front of their house. Although they fear that gang members are looking for their son, they have not contacted police.

In addition to De Leon's testimony at the IJ hearing, the parties stipulated that Dr. Thomas Boerman qualified as an expert in the country conditions of Guatemala, specifically crime and corruption in its government. Dr. Boerman opined that De Leon "would be at a high risk of egregious physical harm and death if returned to Guatemala based on his status as a member of his nuclear and extended families and for his defiance to the gang's extortion demands." AR89.

The IJ credited De Leon's testimony. Nonetheless, he concluded that De Leon had not established past persecution. Specifically, the IJ concluded, *inter alia*, that De Leon did not show a nexus between the harm he alleges he would suffer and either De

4

Leon's political opinion, or his membership in the PSG of "kinship ties" to his wife's family. AR97. The IJ further found that De Leon did not prove that the Guatemalan government would be unable or unwilling to protect him. De Leon also failed, according to the IJ, to meet his burden of establishing a well-founded fear of future persecution. Additionally, the IJ concluded that De Leon had not met his burden of showing that he was unable to internally relocate because he and his family moved within Guatemala and "nothing happened to them there." AR100. For these reasons, the IJ denied both De Leon's asylum and withholding of removal claims. The IJ also denied De Leon's CAT claim because he had failed to show that any harm he would suffer would constitute torture and that such harm would occur with the acquiescence of the Guatemalan government.

De Leon timely appealed to the BIA. The BIA adopted and affirmed the IJ's decision denying relief. This timely petition for review followed.[2]

## II.

De Leon challenges the denial of his asylum claim. In his view, the IJ should have found past persecution, thereby establishing a presumption that he had a well-founded fear of future persecution. De Leon contends the IJ erred by ignoring expert evidence

---

[2] Because the BIA adopted and affirmed the IJ's decision, "we have authority to review" both determinations. *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We must uphold the BIA's determination if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (omitting citation). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "[W]e apply plenary review to legal issues." *Shkembi v. Att'y Gen.*, 41 F.4th 237, 241 (3d Cir. 2022).

that he was persecuted on account of his membership in a PSG, specifically his kinship with his wife's family in the United States.

We are not persuaded. The IJ acknowledged the substance of Dr. Boerman's opinion and by no means ignored his assessment. But the IJ noted that in September 2019 when De Leon had his first encounter with Mara 18, De Leon had no relatives in the United States. While De Leon learned after coming to the United States that his father-in-law had similarly been extorted and had been beaten while in Guatemala, the IJ explained that no evidence connected mistreatment of the father-in-law, more than 20 years earlier, to De Leon's encounter with the gang while driving a bus. Furthermore, De Leon's wife, who seemed the more likely target for extortion based on her parents' residence in the United States, had not been subjected to extortion demands either before or after their marriage. We conclude that substantial evidence supports the IJ's finding that De Leon failed to establish a nexus between his membership in a PSG and the mistreatment he endured. In the absence of a nexus between De Leon's mistreatment and his membership in his wife's family, his asylum claim fails. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) (emphasizing statutory requirement for asylum that persecution must be "on account of" a protected characteristic).

De Leon also contends that the IJ erred in concluding that he had failed to meet his burden of showing that Guatemala's government was unable or unwilling to protect him and his family. De Leon contends that his credible testimony about police corruption was sufficient to show that the Government was unable or unwilling to protect him. Having weighed De Leon's testimony and the country conditions report, the IJ permissibly

6

placed more weight on the country conditions report, which indicated that police investigate both crimes and gang activity, and that Guatemala had undertaken efforts to eliminate corrupt police officers. *See Garland v. Ming Dai*, 593 U.S. 357, 366 (2021) (acknowledging that "the agency, like any reasonable factfinder, is free to 'credit part of [a] witness' testimony without' necessarily 'accepting it all'") (omitting internal citation) (alteration in original). The IJ also pointed out that De Leon never notified authorities of the extortion demands that were made upon him. Nor had De Leon's parents reported the cars that had been parked in front of their home. Thus, De Leon did not offer persuasive evidence that showed that any report he might have made would have been futile. We conclude that there is substantial evidence to support the IJ's determination.

De Leon also faults the IJ's determination that De Leon failed to prove that he could not internally relocate within Guatemala, a determination which the BIA affirmed, The IJ acknowledged that De Leon and his family did not feel safe, but noted that they had not been harmed in any way after they relocated to San Pedro. The BIA affirmed, noting that the IJ did not err in finding that they had relocated within Guatemala without incident. Because the evidence does not compel a finding to the contrary, we will not disturb the BIA's order. 8 U.S.C. § 1252(b)(4)(B).

In short, substantial evidence supports the denial of De Leon's asylum claim.

## III.

De Leon also asserts that the denial of his withholding claim was error. He contends that the "IJ may have been relying on the asylum nexus standards" instead of applying the standard applicable to withholding claims. Appellant's Br. 21.

"To qualify for withholding of removal, an alien must establish a 'clear probability of persecution,' i.e., that it is more likely than not, that s/he would suffer persecution upon returning home" on account of a protected ground. *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011) (citing *I.N.S. v. Stevic,* 467 U.S. 407, 429–30 (1984)); *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 (3d Cir. 2015). "[T]his standard is more demanding than that governing eligibility for asylum, [so] an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." 663 F.3d at 591. Mindful of this higher standard, the IJ concluded that the denial of De Leon's asylum claim meant that his withholding of removal claim also failed as a matter of law. We discern no error in this determination.

## IV.

De Leon also applied for relief under the CAT. He contends that the IJ erred in denying his claim by failing to consider country conditions. The IJ's decision belies De Leon's assertion. The IJ stated in his decision that he considered all evidence that had been admitted, regardless of whether it was "specifically mentioned." AR86. The IJ also acknowledged Dr. Boerman's expert report, which considered numerous sources. And the IJ's decision cited to the Guatemala 2021 Human Rights Report. We reject De Leon's contention that the IJ ignored the evidence of Guatemala's country conditions in denying relief under the CAT.

In sum, we will deny the petition for review.

8