[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12400

Non-Argument Calendar

_____

OLAKUNLE A. OSHODI,

                                                            Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A023-484-662

_____

Before JORDAN, LUCK, and ED CARNES, Circuit Judges.

PER CURIAM:

Since 1982, Olakunle Oshodi, a native and citizen of Nigeria, has resided illegally in the United States.  In the most recent round of his removal proceedings he has sought deferral of removal under the United Nations Convention Against Torture (CAT), contending that he should not be removed to Nigeria because it is more likely than not that he will be tortured there.[1]  The Board of Immigration Appeals (BIA) denied him CAT relief, and Oshodi has petitioned us for review of that decision.

## I.

We begin with a brief overview of Oshodi's removal proceedings, which have spanned nearly 20 years.  The government first began his removal proceedings in November 2005.  In response, Oshodi filed an application for asylum, withholding of removal, and CAT protection.  An immigration judge (IJ) in Arizona denied Oshodi's applications in May 2006.  Oshodi appealed that denial, which the Ninth Circuit reviewed *en banc*, ultimately remanding the case in 2013 because the IJ hadn't given Oshodi an adequate opportunity to testify at his removal hearing.  *See Oshodi v. Holder*, 729 F.3d 883 (9th Cir. 2013) (en banc).

---

[1] Oshodi has already been removed to Nigeria.  His removal does not make his case moot and does not foreclose our review of the agency's final decision.  *See Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001).

But before the IJ could hold that post-remand removal hearing, Oshodi was indicted for and convicted of the federal crimes of conspiracy to distribute 50 grams or more of methamphetamine and 100 grams or more of heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1), so the immigration court held his removal proceedings in abeyance until he concluded his sentence in federal prison. And because he was being housed in a federal prison in Georgia for that sentence, his removal proceedings were transferred to an immigration court in Georgia. There, after Oshodi's release from federal prison, an IJ finally held his post-Ninth-Circuit-remand removal hearing in February 2023. At that hearing, Oshodi conceded that he was no longer eligible for asylum or withholding of removal because of his felony convictions. He maintained his CAT claim, though, arguing that it was likely he would be tortured if he were removed to Nigeria. The IJ denied that claim and ordered his removal. Oshodi appealed to the BIA, which affirmed the IJ's decision and dismissed his appeal. This is Oshodi's petition to review the agency's decision.

## II.

CAT protection may be granted in the form of either withholding of removal or deferral of removal. 8 C.F.R. § 208.16(c)(4). Because of Oshodi's prior felony convictions, he is barred from withholding of removal under CAT. *See id.* § 208.16(d)(2). Deferral of removal is thus the only form of CAT protection that he could possibly establish entitlement to receive. *See id.* § 208.17(a). The IJ and BIA denied him that relief because he failed to show that he was more likely than not to be tortured in Nigeria with the consent

4                    Opinion of the Court                    23-12400

or acquiescence of its government officials. *See id.*; *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004); *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010); *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020); *see also* 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a).

Oshodi contends that the BIA did not give reasoned consideration to the evidence in the record. Alternatively, he contends that substantial evidence does not support the BIA's decision. We discuss each contention in turn.[2]

### A.

Oshodi first contends that the BIA did not give reasoned consideration to the facts underlying his position that he would be tortured if he was returned to Nigeria. We cannot review the BIA's decision unless it has given reasoned consideration to Oshodi's claims and has made adequate findings. *See Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019). We review *de novo* whether reasoned consideration has been given. *Id.* And that is not a high standard. *See id.* ("To generate grounds for reviewability in this Court, the Board does not need to do much."). So long as we are "left with the conviction that the Board has heard and thought

---

[2] "Where the BIA issues its own opinion, we review only that opinion, except to the extent that it expressly adopts the immigration judge's reasoning." *Todorovic*, 621 F.3d at 1324. Here the BIA adopted some of the IJ's reasoning, so we review those parts of the IJ's opinion as well. *See id.*

about the case and not merely reacted," that is enough. *Id.* (alteration and quotation marks omitted).

The BIA fails to give reasoned consideration to a claim when it (a) misstates the contents of the record, (b) fails to adequately explain its rejection of logical conclusions, or (c) provides justifications for its decision that are unreasonable and do not respond to any arguments in the record. *Id.* at 1334. Although the BIA must consider all the evidence and issues put forth by the alien, it does not need to specifically address each piece of evidence that is presented. *Id.* Instead the BIA needs to discuss only evidence that is "highly relevant," meaning that "the record would compel a different outcome, absent the discussion of certain evidence." *Id.* Once the reasoned consideration threshold requirements are met, we will review the BIA's legal conclusions *de novo* and its factual findings for substantial evidence. *See id.*

Oshodi argues that the BIA failed to give reasoned consideration to five pieces of evidence that show that it is more likely than not that he would be tortured if he's removed to Nigeria. He contends that the BIA either misstated or ignored the following key evidence: (1) Oshodi's background as a political activist in Nigeria in the 1970s and early 1980s; (2) the ongoing validity of a 1981 Nigerian warrant for his arrest that could lead to his torture; (3) the extent to which Oshodi was tortured in Nigeria in 1981; (4) the impact of the change in political party control of the Nigerian government; and (5) the reported current country conditions in Nigeria.

The BIA and IJ gave reasoned consideration to those pieces of evidence.  First, with regard to the evidence of his political activity and background, the IJ noted that Oshodi was a member of a progressive political party in Nigeria during the 1970s and 1980s and that his expert had testified that Oshodi would be harmed if removed to Nigeria.  The BIA also noted that Oshodi had been a member of a progressive political party in the 1970s and 1980s and that the political party in control of Nigeria at that time had harmed him for his political beliefs and involvement.  The BIA further recognized the expert testimony provided by Oshodi's expert in his 2006 removal proceedings about Oshodi's political background. But both the BIA and the IJ concluded that there had been a material change in the circumstances since 2006 because a progressive president had recently been elected in Nigeria.  And they concluded that based on the evidence provided, Oshodi had not shown that it was more likely than not that he would be tortured because of his more than 40-year-old political background.

Second, the BIA considered Oshodi's evidence about what he says is an active warrant for his arrest that was issued more than 40 years ago by a government no longer in power.  The BIA noted that the warrant was issued more than four decades ago and quoted the IJ's finding that Oshodi merely "supposes" that the current government would act on the warrant or torture him.  The IJ also addressed Oshodi's evidence pertaining to the warrant by noting the following:

> [T]he respondent believes that this warrant is still active, but is taking the word of individuals that he has spoken to sporadically, and to be honest, there is no evidence to support that this information is accurate other than pure supposition and speculation. The respondent relies on an uncle or a friend or a cousin telling him this, but there has been no evidence presented to the Court that this warrant is still active.

That discussion is more than sufficient to constitute reasoned consideration. *See Ali*, 931 F.3d at 1333.

Third, the BIA did not misstate the record as Oshodi asserts it did by finding that he had not been tortured more than 40 years ago. Instead, it expressly determined that the past harm Oshodi suffered in Nigeria "may rise to the level of torture." The BIA also recognized that past torture can be relevant as to future torture.

Fourth, Oshodi points out that the BIA did not discuss the "political rivalry" between the progressive party to which he belonged in the 1980s and the progressive party in control of the Nigerian government now. That's true, but the only evidence that Oshodi provided about that supposed political rivalry was his own testimony to the IJ that his progressive party "is against" the current progressive party. And the only evidence he provided about the political differences between the parties was his testimony that the current progressive party are "pretty much dictators." Oshodi's assertion that he was prevented from presenting his testimony about the actual differences between the two progressive

parties is not supported by the record. The IJ asked what the current progressive party believes in and Oshodi responded, in part, that "[t]hey dictate to the people." None of that testimony was "highly relevant" to Oshodi's CAT claim, and the BIA was not required to expressly address it. *See Ali*, 931 F.3d at 1334. The record also shows that the IJ repeatedly asked Oshodi if he had anything else to say before issuing its decision.

Fifth and finally, Oshodi is correct that the IJ and BIA did not cite the finding in the State Department's 2021 Country Report that torture and human rights abuses remain prevalent in Nigeria. *See Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1171 (11th Cir. 2014) (explaining that an IJ may "rely heavily" on State Department reports, but such reports are reliable only to the extent that they comment upon, or are relevant to, the highly specific questions raised by an alien). But that specific source is not "highly relevant" evidence in the context of Oshodi's claim. *See Ali*, 931 F.3d at 1334. The IJ did note that the Nigerian government has had problems with human rights violations. And the BIA recounted that there is "little dispute that, at times, human rights abuses occur in Nigeria." Ultimately, though, both the IJ and the BIA determined that the evidence submitted by Oshodi failed to show that it was more likely than not that *he* would be tortured.

The BIA gave reasoned consideration to all the evidence and issues presented by Oshodi. It properly recounted the material portions of record, adequately explained its rejection of Oshodi's arguments, and reasonably justified its conclusions. The BIA was not

required to address every piece of evidence in the record. *See Ali*, 931 F.3d at 1333. That it gave reasoned consideration to the "highly relevant" evidence is sufficient for this threshold inquiry. *See id.*

### B.

Oshodi next argues that substantial evidence does not support the BIA's denial of his CAT claim. We review the BIA's legal conclusions *de novo* and its factual findings for substantial evidence. *Ali*, 931 F.3d at 1333. The Supreme Court has held that "a noncitizen may obtain judicial review of factual challenges to CAT orders," but "that review is highly deferential." *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020); *see also Lingeswaran*, 969 F.3d at 1293–94 (holding that substantial evidence supported the BIA's denial of CAT relief). Under that standard, "we may not reweigh the evidence from scratch." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quotations omitted). Instead we examine the record evidence in the light most favorable to the BIA's decision and make all reasonable inferences in favor of the decision. *Id.* "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.* (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004)). Findings of fact must be upheld unless a "reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

To determine an applicant's eligibility for CAT protection, the agency must consider evidence "relevant to the possibility of

future torture," which includes: "(1) whether the applicant has experienced past torture; (2) whether he could avoid future torture by relocating within the country; and (3) evidence about wider country conditions, including whether there have been gross, flagrant or mass violations of human rights in the country." *K.Y. v. U.S. Att'y Gen.*, 43 F.4th 1175, 1181 (11th Cir. 2022), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419–23 & n.2 (2023); *see also* 8 C.F.R. § 208.16(c)(3). To establish his entitlement to relief, "[t]he evidence must demonstrate that the applicant will be *specifically and individually* targeted for torture." *K.Y.*, 43 F.4th at 1181. That means that "evidence of generalized mistreatment and some isolated instances of torture" is not enough. *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324 (11th Cir. 2007).

Also, "[i]t's not always the case that credibility equals factual accuracy, nor does it guarantee a legal victory." *Garland v. Ming Dai*, 593 U.S. 357, 372 (2021). To that end, "the agency may weigh . . . 'credible testimony along with other evidence of record.'" *Id.* at 371 (quoting 8 U.S.C. § 1158(b)(1)(B)(ii)). "[E]ven credible testimony may be outweighed by other more persuasive evidence or be insufficient to satisfy the burden of proof." *Id.* at 373. "The only question for judges reviewing the [agency's] factual determinations is whether *any* reasonable adjudicator could have found as the agency did." *Id.* at 368.

Oshodi contends that substantial evidence does not support the BIA's conclusion that he would likely not be tortured in Nigeria. Oshodi takes issue with the BIA's conclusion that Nigeria's

political climate has materially changed since 2006.[3] He also asserts that the BIA incorrectly found that his CAT claim was vague and speculative.

Despite Oshodi's contention to the contrary, substantial evidence *does* support the BIA's conclusion.  Oshodi's CAT claim was largely rooted in the fact that he had previously been tortured by Nigerian security forces because of his political activities in 1981. We do not discount the severity of that incident.  But, as the IJ and BIA found, it happened more than 40 years ago and Oshodi has not resided in Nigeria since then.  *Cf. Ruiz-Colmenares v. Garland*, 25 F.4th 742, 751 (9th Cir. 2022) ("Petitioner hasn't received a single threat while in the United States and, combined with the twenty-year distance between his last incident and the present day, there is no evidence that he currently faces any particularized risk of harm.").  And though Oshodi's expert testified that Oshodi would be tortured if he returned to Nigeria, that testimony was provided in 2006 when Nigeria was ruled by the former military leader Olusegun Obasanjo.

The evidence in the record supports the IJ's and BIA's determination that a material change has taken place in Nigeria since 2006.  The country is now ruled by a democratically elected president who belongs to the All Progressive Congress Party.  And the

---

[3] That is the date of Oshodi's first removal hearing in Arizona, in which his expert testified that he would likely be tortured if he were returned to Nigeria.

BIA was free to rely on the 2021 Country Report, which states that torture was outlawed in Nigeria in 2017. *See Gaksakuman*, 767 F.3d at 1171.

The BIA also found that Oshodi failed to show that the more than 40-year-old warrant for his arrest is active or would lead to him being tortured. While Oshodi's expert testified in 2006 that the warrant was still active and would result in Oshodi being tortured, the record supports the IJ's and BIA's determination that the political climate in Nigeria has changed since that testimony was given.

And Oshodi's own testimony regarding the warrant was vague and conclusory. For example, when Oshodi was asked during the post-Ninth-Circuit-remand proceedings in 2023 how he knew the warrant was still active, he stated that he checked with his uncle who had "connections." When asked how he knew the police were still looking for him, he responded that a colleague had gotten "word from one person to the other." And when asked why he would be tortured instead of merely arrested for the warrant, he simply stated, "Because of what I've done in the past." Even though the IJ found Oshodi's testimony to be "generally credible," "credible testimony may be outweighed by other more persuasive evidence or be insufficient to satisfy the burden of proof." *Ming Dai*, 593 U.S. at 373. That's what happened here. *See id.*

After reviewing the entire record, a reasonable adjudicator could find, as the BIA did, that Oshodi failed to show he was more likely than not to be tortured if removed to Nigeria. *See Garland*,

23-12400    Opinion of the Court    13

593 U.S. at 368.  Substantial evidence thus supports the BIA's rejection of Oshodi's CAT claim.

**PETITION DENIED.**